## DOOLEY v. PEASE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 97.  Argued  November 12, 1900.—Decided January 21, 1901.

In Illinois the law does not permit the owner of personal property to sell
it and still continue in possession of it, so as to exempt it from seizure
and attachment at the suit of creditors of the vendor; and in cases of
this kind the courts of the United States regard and follow the policy
of the state law.

Where a case is tried by the court, a jury having been waived, its findings
upon questions of fact are conclusive in the courts of review.

Errors alleged in the findings of the court are not subject to revision by the
Circuit Court of Appeals or by this court, if there was any evidence up-
on which such findings could be made.

Applying the settled law of Illinois to the facts as found, the conclusion
reached in this case by the Circuit Court, and affirmed by the Circuit
Court of Appeals, that the sale was void against the attaching creditors,
must be accepted by this court.

THIS was an action brought on June 25, 1895, in the Circuit
Court of the United States for the Northern District of Illi-
nois, by Michael F. Dooley, as receiver of the First National
Bank of Willimantic, Connecticut, against James Pease, a citi-
zen of the State of Illinois. The declaration complained of a
trespass by the defendant, who was sheriff of Cook County,
Illinois, in levying upon and taking possession of a stock of
silk goods, in a store room in the city of Chicago, which were
claimed by the plaintiff to belong to him. After a plea of not
guilty the case was, by consent, tried without a jury.

On May 28, 1897, judgment, under the findings, was entered
in favor of the defendant.

The case was then taken to the Circuit Court of Appeals for
the Seventh Circuit, and on July 6, 1898, the judgment of the
Circuit Court was affirmed. A writ of error was thereupon
allowed from this court.

*Mr. Edward Winslow Paige* for plaintiff in error.

*Mr. Lockwood Honoré* for defendant in error. *Mr. A. W.
Green* and *Mr. F. Peters* were on his brief.

MR. JUSTICE SHIRAS delivered the opinion of the court.

Among other questions passed upon by the Circuit Court
was whether the alleged sale of goods by the Natchaug Silk
Company, through J. D. Chaffee, its president, to Dooley, as
receiver of the First National Bank of Willimantic, either as
payment in part, or as security for payment, of the debt of the
silk company to the bank, was accompanied or followed by the
open, visible and notorious change of possession, required by
the law of the State of Illinois.

It is conceded, or, if not conceded, we. regard it as well established, that the policy of the law in Illinois will not permit the owner of personal property to sell it and still continue in possession of it, so as to exempt it from seizure or attachment at the suit of creditors of the vendor. If between the parties, without delivery, the sale is valid, it has no effect on third persons who, in good faith, purchase it, and an attaching creditor stands in the light of a purchaser, and as such will be protected. *Thornton* v. *Davenport*, 1 Scammon, 296; *Shawn* v. *Jones*, 16 Illinois, 117; *Martin* v. *Dryden*, 1 Gilman, 187; *Burnell* v. *Robertson*, 5 Gilman, 282.

It is equally well established that the courts of the United States regard and follow the policy of the state law in cases of this kind. "Any other rule," said this court in *Green* v. *Van Buskirk*, 7 Wall. 139,. " would destroy all safety in derivative titles and deny to a State the power to regulate its personal property within its limits."

In *Henry* v. *R. I. Locomotive Works*, 93 U. S. 664, 671, it was said:

" It was decided by this court in *Green* v. *Van Buskirk*, 15 Wall. 307; 7 Wall. 139, that the liability of property to be sold under legal process, issuing from the courts of the State where it is situated, must be determined by the law there, rather than of the jurisdiction where the owner lives. These decisions rest on the ground that every State has the right to regulate the transfer of property within its limits, and that whoever sends property to it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides. He has no absolute right to have the transfer of property, lawful in that jurisdiction, respected in the courts of the State where it is found, and it is only on a principle of comity that it is ever allowed. But this principle yields when the laws and policy of the latter State conflict with those of the former. . . .

" The policy of the law in Illinois will not permit the owner of personal property to sell it, either absolutely or conditionally, and still continue in possession of it. Possession is one of the strongest evidences of title to this class of property, and cannot

be rightfully separated from the title, except in the manner pointed out by statute. The courts of Illinois say that to suffer without notice to the world the real ownership to be in one person, and the ostensible ownership in another, gives a false credit to the latter, and in this way works an injury to third persons. . . . Secret liens which treat the vendor of personal property, who has delivered possession of it to the purchaser as the owner until the payment of the purchase money, cannot be maintained in Illinois. They are held to be constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession. *McCormick* v. *Haddon*, 37 Illinois, 370; *Ketchum* v. *Watson*, 24 Illinois, 591;" *Pullman Car Co.* v. *Pennsylvania*, 141 U. S. 22.

It being, then, established that, under the policy of the law of Illinois, in order to protect the goods in question from attachment by creditors of the Natchaug Silk Company, an attempted sale must be accompanied by a change of possession, which change must be visible, open or notorious, did the facts of the transaction between the silk company and Dooley show such a change of possession?

The findings of the Circuit Court on this feature of the case were as follows:

" Said store had for several years prior to the sale to Dooley been operated by said Natchaug Silk Company as a store for the sale to dealers of its manufactured goods through one H. L. Stanton, who down to the date of said sale, April 25, 1895, had acted as its agent for that purpose, and at the time said bill of sale was executed and delivered by said Chaffee to said Lucas said Chaffee directed said Lucas to have the said goods, that were included in said bill of sale, sold and the proceeds of such sale applied by said plaintiff as a payment upon the indebtedness of said Natchaug Silk Company to said First National Bank of Willimantic.

"On the morning of April 26, 1895, an attorney employed by said plaintiff called at said store, purported to take possession of said goods in the name of the plaintiff, employed said H. L. Stanton as agent of the plaintiff to sell said goods and

remit the proceeds of such sales to the plaintiff, and took from said Stanton a receipt stating that he, said Stanton, had received said stock of goods for the plaintiff and subject to the plaintiff's directions. Immediately thereafter said Stanton caused the said stock of goods to be insured in the name of the plaintiff, and opened a new set of books for the purpose of keeping an account of the sale and disposition of said goods and of the expenses of said Stanton in and about the making of such sale, and also made an inventory of the said goods and delivered the same to said attorney for the plaintiff. From that date said Stanton understood himself to be acting solely as the agent of the plaintiff. A portion of the said stock of goods was sold by said Stanton to various persons, to whom the said goods were billed in the name of the plaintiff, and the proceeds of said sales, amounting to about $7000, were received by said Stanton and placed to the credit of the plaintiff. No change was made from April 25, 1895, until after May 20, 1895, in the signs on the outside of the store, which signs were ' Natchaug Silk Company.' . . .

" After the making of said bill of sale there was no change in the possession of the goods other than as above named, but they remained in the custody of the same persons who had theretofore been in charge of them for the silk company, and they were apparently in the possession of the silk company, so far as appeared to the public, and were sold in the same way as theretofore down to the day of the attachment. There was no change in the title to or possession of said goods which was visible, open or notorious, down to the date of the attachment, unless the facts hereinbefore and hereinafter specifically stated did as matters of law constitute a visible, open and notorious change of possession. . . . The signs of the Natchaug Silk Company, on the outside and inside of the store, were not changed between April 24th and the time of the levy of the attachments. There was nothing in the appearance of the store, outside or inside, to indicate that there had been any change in the title or possession to the goods on or after April 25th and until May 25th, the time of the attachment. The same persons, being five or six in number, remained in the store performing,

after the transfer to Dooley, apparently the same duties they had been performing prior to April 25th. The salesmen were instructed not to inform the public nor customers of the transfer to Dooley, and they did not do so, but all the goods that were shipped from said store were billed to customers in the name of the plaintiff and not in the name of the silk company. Orders kept coming in addressed to the Natchaug Silk Company after April 25th for several weeks, in all respects as they had come in prior to that, and these orders were appropriated and filled by Stanton out of the stock in the store. The office fixtures were not attempted to be transferred to Dooly, but they were used in conducting the business after April 25th, in all respects as before, by Stanton in the sale of the goods. Stanton's books of account and papers in relation to sales after April 25th were all kept in a safe belonging to the Natchaug Silk Company, and which had its name painted in large letters thereon and which was standing in the store. No advertisement was made of the transfer to Dooley, nor was any public notice given thereof, unless as a matter of law the facts hereinbefore and hereinafter stated constituted such public notice. There was nothing to inform the public that any change had taken place in the ownership or possession of the goods between April 24, 1895, and the levy of the attachment on May 20, 1895, unless as matter of law the facts hereinbefore and hereinafter mentioned constituted sufficient information to the public of such change. The change of ownership was not open, or visible, or notorious, unless as matter of law the facts hereinbefore or hereinafter stated constituted open, or visible, or notorious change of ownership."

We have thus stated all the findings of fact relative to the question of the change of possession, shown by the record.

Where a case is tried by the court, a jury having been waived, its findings upon questions of fact are conclusive in the courts of review, it matters not how convincing the argument that upon the evidence the findings should have been different. *Stanley* v. *Supervisors*, 121 U. S. 547.

Errors alleged in the findings of the court are not subject to revision by the Circuit Court of Appeals, or by this court, if

there was any evidence upon which such findings could be made. *Hathaway* v. *National Bank,* 134 U. S. 498; *St. Louis* v. *Retz,* 138 U. S. 241; *Runkle* v. *Burnham,* 153 U. S. 225.

We agree with the Circuit Court of Appeals in its statement that "the facts stated in the findings were evidentiary only, and instead of being conclusive of publicity, tended rather to show intentional concealment; that they were certainly sufficient, even if we were required to look into the evidence, to support the finding of the ultimate fact." 60 U. S. App. 248.

Applying, then, the settled law of Illinois to the facts as found, the conclusion reached by the Circuit Court, and affirmed by the Circuit Court of Appeals, that the sale was void as against the attaching creditors, must be accepted by this court.

This conclusion disposes of the case, and renders a consideration of the other questions presented by the findings unnecessary.

The judgment of the Circuit Court of Appeals is

*Affirmed.*