OPINION
Defendant-appellant Wayne Saban appeals from his conviction following a jury trial for felonious assault (R.C. 2903.11) arising out of a bar fight in the Flats. Defendant claims the trial court erred in barring certain cross-examination, abused its discretion in denying a new trial and further argues that the State's case was not supported by sufficient evidence and the conviction was against the manifest weight of the evidence. We find no reversible error and affirm.
On Saturday, March 8, 1997, the victim, Richard Barron, and his fiance, Marcy Gardner, traveled to "The Bar" in the Flats area of Cleveland. At about midnight a fight broke out in the crowded bar. Although the evidence is disputed as to whether Mr. Barron was a party to this fight, he testified that a bouncer grabbed him from behind by the throat in a choke hold. He wrestled himself free and he and the bouncer fell to the floor. Upon getting to his feet, Mr. Barron testified that he was immediately grabbed by another bouncer who was over six feet tall and weighing more than two hundred pounds. With his arms pinned back behind him by this bouncer, Mr. Barron testified that yet a third bouncer (identified as defendant) approached him, pulled his head down and kneed him in the face. The victim testified that after being struck in this manner, he went dizzy and unconscious.
After being dragged to the lobby by his feet, the victim was transported via EMS to Fairview Hospital. The medical records and photographs admitted at trial demonstrated that the victims injuries included a badly broken nose, broken jaw and a fractured orbit near the right eye. Surgery was required at Lake East Hospital to correct his broken nose and remove bone fragments from his cheekbone.
The following Friday, the victim returned to the bar with Det. Allen Travis of the Cleveland Police Department and identified defendant as his assailant. Det. Travis testified to investigating the crime and the victims identification of the defendant at the bar.
Another bar patron, Ms. Tanya Madsen, testified that prior to the assault, she had conversations with defendant; she saw defendant run through the crowd toward a fight; she observed the victim being dragged out of the bar by his feet; she saw defendant making gestures with his knee and saying to the other bouncers that he kneed the victim in the face; and that defendant ordered other bar employees to lay down newspapers to soak up the victims blood that had spilled on the floor.
Ms. Madsen's fiance Darren Hebner, testified that he also saw defendant dragging Barron out of the bar by his feet; that the victim was unconscious and bleeding from head injuries; that the bouncers were attempting to clean up the blood with newspapers; and that he was arrested for disorderly conduct due to his refusal to leave the area.
The victim's fiance, Ms. Marcy Gardner, also testified that defendant dragged the victim out of the bar by his feet. Her testimony depicted his condition and these events as they transpired. Ms. Gardner testified that the victim was dancing with her and "minding his own business" immediately before being taken to the floor and beaten by two bouncers. She identified the defendant as one of these bouncers. Ms. Gardner further related that as she attended to the victim, she was handed a napkin upon which was written the name and phone number of a witness to the events.
That witness, Mr. Robert Douglas, testified that he had never met either Mr. Barron or Ms. Gardner before this event, but that after seeing what happened he volunteered his name, address and phone number on the napkin. He testified that he witnessed the victim being kneed in the face by a bouncer. Mr. Douglas unequivocally identified defendant as the party who kneed Barron in the face.
Officer Migdalia Flores of the Cleveland Police Department testified that she responded to "The Bar" in the Flats and observed the victim in the lobby area "laying out pretty much unconscious." After requesting immediate EMS assistance, she began interviewing witnesses to the assault. Upon receiving a physical description of a suspect, Officer Flores approached and attempted to interview defendant. She described him as being evasive, nervous, irritated, jittery, jumpy, sweaty and slightly uncooperative in responding to basic requests for information as to his identity, his position and the events of that night.
The defense presented evidence of various witnesses at the bar scene who testified that defendant was not the person who kneed Barron in the face. The trial court denied a Crim.R. 29 motion for acquittal. Following closing arguments, the jury returned a guilty verdict. This timely appeal ensued.
We will review the assignments of error in the order presented and together where they are interrelated.
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT THE OPPORTUNITY TO IMPEACH A WITNESS ON CROSS-EXAMINATION WITH ADMISSIBLE HEARSAY STATEMENTS THAT WERE RECORDED IN HIS HOSPITAL RECORD.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT HIS CONSTITUTIONAL RIGHT TO CONFRONT A WITNESS AGAINST HIM CONCERNING BIAS.
 III. THE TRIAL COURT COMMITTED CUMULATIVE ERROR WHICH WARRANTS REVERSAL OF THE TRIAL COURTS DECISION.
In these assignments of error, defendant argues the trial court abused its discretion in denying him the ability to cross-examine the victim and another witness.
The Ohio Supreme Court has held that a trial court possesses broad discretion as to the admissibility or exclusion of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, a reviewing court will not interfere. State v. Lowe (1994), 69 Ohio St.3d 527; State v.Maurer (1984), 15 Ohio St.3d 239, 265. An abuse of discretion is more than an error of law or judgment, it implies that the trial courts attitude is unreasonable, arbitrary or unconscionable.State v. Keenan (1998), 81 Ohio St.3d 133, 137; State v. Adams
(1980), 62 Ohio St.2d 151, 157-158.
Defendant first contends that he should have been permitted to cross-examine the victim about his contradictory statements in the hospital records. However, we see no prejudice to defendant from this limitation on cross-examination.
Whether or not the victim was involved in the fight as alleged by the defense was irrelevant to the prosecution's case. Defendant raised no facts or contentions regarding self defense, defense of others or provocation. Rather, defendant focused on the issue of identification at trial through his witnesses and his arguments to the jury. Even if the victim willingly joined the fray, it would not excuse the defendant from maliciously kneeing him in the face while he was vulnerable and held in the arms of another bouncer.
Defendant also contends that the trial court abused its discretion in denying him an opportunity to cross-examine a State's witness, Darren Hebner, about his conviction for disorderly conduct on the night in question. We see no material prejudice as this information was presented to the jury.
Even though the trial court excluded any reference to the charges and the conviction, Hebner's disorderly conduct arrest was communicated to the jury. Ms. Madsen volunteered on direct examination that Darren Hebner was arrested after the assault for failing to clear the scene. Hebner himself admitted on direct examination that he was arrested for disorderly conduct. This was also mentioned during cross-examination. (Tr. 75). The only evidence not admitted at trial were the facts surrounding his conviction for disorderly conduct, a minor misdemeanor.
Defendant asserts that Hebner should have been subject to cross-examination of his disorderly conduct conviction under Evid.R. 404(2) and Evid.R. 616. Under Rule 404 (2), evidence of other crimes, wrongs, and acts is inadmissible to prove the character of the witness in order to show that he acted in conformity therewith. However, such evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 616 states:
 Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.
Defendant fails to indicate how a conviction for disorderly conduct (failing to leave the scene) after the crime occurred has any rational relationship to the permissible uses of other crimes, wrongs or acts set forth in Evid.R. 404 (B). Defendant contends that Hebner had a motive to cover up his involvement in the incident and to implicate the defendant. The record reflects that Hebner was arrested outside of the bar and after the assault for failing to leave the scene. The record also reflects that Hebner had never spoken to the victim prior to the assault and had only met him through a mutual friend. Accordingly, defendant has failed to establish Hebner's motive to falsely implicate defendant in the assault and therefore, he was not materially prejudiced by the exclusion of the conviction.
Furthermore, the trial court correctly found that Hebner's conviction was inadmissible under Evid.R. 609. Under Evid.R. 609(A)(1), evidence that a witness has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year. Under subsection (A)(3) of this rule, evidence that a witness has been convicted of a crime is admissible, regardless of the punishment, if the crime involved dishonesty or false statement.
In the instant case, Hebner was convicted of disorderly conduct, a minor misdemeanor. This offense is not punishable by death or imprisonment of a year or more and does not involve dishonesty or false statement.
Accordingly, the trial court correctly held that the conviction was inadmissible to impeach Hebner. This finding is not unreasonable, arbitrary or unconscionable. The trial court did not abuse its discretion and the defendant has not been materially prejudiced.
 Defendant's Assignments of Error I, II and III are overruled.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR NEW TRIAL.
Defendant contends the trial court erred in denying his motion for a new trial based on newly discovered evidence and irregularities with regard to behavior of defense witnesses.
The decision to grant or deny a motion for a new trial on the grounds of newly discovered evidence lies within the sound discretion of the trial court. State v. Williams (1975), 43 Ohio St.2d 88,93. Such a ruling will not be disturbed absent an abuse of discretion. State v. Hawkins (1993), 66 Ohio St.3d 339, 350. As discussed above, an abuse of discretion is more than an error of law or judgment, it implies that the trial courts attitude is unreasonable, arbitrary or unconscionable. Keenan, supra, at 137;Adams, supra, at 157-158. Under Crim.R. 33(A)(6), a new trial may only be granted on newly discovered evidence grounds as follows:
 When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial.
As a general rule, a motion for a new trial is granted where the defendant shows that he was unavoidably prevented from discovering the evidence which is the basis of the motion during the course of the trial. State v. Gray (April 13, 1995), Cuyahoga App. No. 67574, unreported at 4; State v. Pinkerman (1993),88 Ohio App.3d 158, 161. The evidence must have been the type that would have produced a different result at trial. State v. Edwards (Oct. 16, 1997), Cuyahoga App. No. 70985, unreported at 7. Similarly, the Ohio Supreme Court has held:
 To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong possibility that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
State v. Petro (1947), 148 Ohio St. 505, syllabus.
A motion for a new trial pursuant to Crim.R. 33(2) is left to the sound discretion of the trial court and its action will not be reversed on appeal absent an abuse of discretion. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of syllabus. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial courts attitude was unreasonable, arbitrary or unconscionable. State v. Keenan (1998), 81 Ohio St.3d 133,137; State v. Adams (1980), 62 Ohio St.2d 151, 157.
In support of his motion for a new trial, defendant presented the affidavit testimony of Don Pope, Sherry Edwards, Scott Adams and Peter Lekaj. Defendant asserts that their affidavits and testimony constitute new evidence which warrant a new trial. We disagree.
None of the testimony presented by the defendant constitutes evidence that "could not with reasonable diligence have been discovered and produced at the trial." In fact, Mr. Pope actually testified at trial and was thoroughly questioned regarding the events surrounding the assault. Ms. Edwards, Mr. Adams and Mr. Lekaj were all subpoenaed to appear at trial and were waiting to be called as witnesses but were never called to testify. Furthermore, all of these witnesses were on the defendants witness list presented to the court prior to trial.
The language in Crim.R. 33(A)(6) and the record herein demonstrate that defendant has failed to meet the requirements of "newly discovered" evidence. The evidence defendant claims to support his motion for a new trial is neither "new" nor was it not discoverable for the simple reason that the witnesses were all known to the defense, on its witness list and were subpoenaed to testify. Defendant was not "unavoidably prevented from discovering the evidence.
Defendant also maintains that the recanting of witness Pope's trial testimony warrants a new trial. On the issue of whether recanted testimony warrants a new trial, it has been held:
 Where a new trial is sought upon the ground that a witness subsequently stated that he gave perjured testimony, the question is, when did the witness tell the truth? Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial. The determination of such matters rests in the sound discretion of the trial court, whose action will not be set aside except for clear and manifest abuse.
State v. Pirman (1994), 94 Ohio App.3d 203, citing State v. Curnutt
(1948), 84 Ohio App. 101; State v. Walker (1995), 101 Ohio App.3d 433,435.
Newly discovered evidence which purportedly recants testimony given at trial is "looked upon with the utmost suspicion." Statev. Germany (Sept. 30, 1993), Cuyahoga App. No. 63568, unreported, citing United States v. Lewis (C.A.6, 1964), 338 F.2d 137. 139. quoting United States v. Trouche (C.A.2, 1954), 213 F.2d 401, 403. Thus, a motion for a new trial should only be granted when the court is reasonably well satisfied that the trial testimony given by a material witness was false. Id. We see no reason here to disturb the trial courts exercise of discretion in this matter.
Defendant also asserts that the irregularity in the proceedings warrants a new trial under Crim.R. 33(A)(1). He asserts that Tracy Wertman, a Summit County Assistant Prosecutor, communicated with Mr. Suvak, a defense witness, outside of the courtroom after being cautioned by the Court not to communicate with any witness. That these communications were in the presence of other defense witnesses resulting in their testimony being "tainted and possibly altered."
Defendant adopts the unusual strategy of complaining about the conduct of his own witnesses. Defendant essentially asserts in his brief that even though his witnesses were already suspect and unreliable, because the Court's admonishment of Ms. Wertman was made outside of the presence of the jury, the jury was not afforded the opportunity to use it to further question the credibility of their testimony. Defendant's failure to control or to inquire at trial as to the activity of his witnesses cannot be the basis for the court to grant a new trial. There is no evidence in the record, other than defendants own accusations, of any misconduct on behalf of any of his witnesses.
Because we find nothing in the record to indicate that the guilty verdict was influenced by the behavior of Ms. Wertman or the defendants witnesses, the decision of the trial court denying the motion for a new trial will not be disturbed. Defendant has not demonstrated that any errors of law or procedural irregularities occurred during the trial which may have affected the outcome of the proceedings. Therefore, we find no abuse of discretion in the trial courts denial of defendants motion for a new trial.
Defendant's Assignment of Error IV is overruled.
 V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT-APPELLANTS MOTION FOR REDUCTION OF CONVICTION BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
We will treat this assignment of error as a challenge both to the weight of the evidence and its sufficiency.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows inState v. Thompkins (1997), 78 Ohio St.3d 380, 386-87;
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29 (A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31. 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount off credible
evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983). 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")
Under R.C. 2903.11, felonious assault is defined as:
(A) No person shall knowingly:
 (1) Cause serious physical harm to another or to another's unborn.
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
The State presented several witnesses whose testimony supports defendants conviction. The victim, Richard Barron, testified that he observed defendant approach him, pull his head down and knee him in the face as he was being restrained by another bouncer. Barron returned to the bar five days later with Det. Travis and identified defendant as the bouncer who assaulted him. Robert Douglas, an independent eye witness, testified and also unequivocally identified defendant as the party who kneed Barron in the face. Tanya Madsen testified that she had conversations with the defendant earlier on the night of the incident. She testified that she observed the defendant say "he got him" and gestured with his knee indicating to the other bouncers that the victim was kneed in the face. Furthermore, Ms. Madsen, Marcy Gardner and Darren Hebner all testified that they observed defendant dragging the unconscious and bleeding victim out of the bar by his feet. Although there was contradictory evidence from the defense witnesses, it was for the jury to determine the credibility of the testimony.
We find the evidence was clearly sufficient to establish the elements of felonious assault. Nor can it be said that the conviction is against the manifest weight of the evidence.
Defendant's Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J.
DYKE. J.
ROCCO. J., CONCUR.